COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-154-CV

JUDITH CUNNINGHAM APPELLANT 

   AND APPELLEE

V.

R. KIM WILLIAMS AND PAMELA  APPELLEE

WILLIAMS AND APPELLANTS 

------------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant and Cross-Appellee Judith Cunningham appeals from the jury’s findings for Appellees and Cross-Appellants R. Kim Williams and Pamela Williams  on their claims of breach of contract and of fraud and the trial court’s denial of her motion for new trial, motion for directed verdict, and motion for judgment notwithstanding the verdict (“JNOV”).  Cunningham brings six issues on appeal:  (1) whether the trial court erred in denying her motion for directed verdict when no basis exists in law or fact to support the submission of the issues of breach of contract or of fraud; (2) whether the trial court erred by denying her motion for directed verdict when no basis exists in law or fact to support the submission of the issues of breach of contract or fraud absent competent proof of damages; (3) 
whether the trial court erred by denying her “Motion for Judgment Notwithstanding the Verdict and/or Motion to Disregard Jury Findings” when no evidence exists to substantiate the findings of breach of contract and fraud; (4) whether the trial court erred by denying her “Motion for New Trial and/or Motion to Modify, Correct, or Reform Judgment” when no evidence or insufficient evidence exists to support findings of breach of contract and fraud; (5) whether the trial court’s submission of a fundamentally defective jury question resulted in reversible error as a matter of law; and (6) whether 
the trial court’s denial of her “Motion for Judgment Notwithstanding the Verdict and/or Motion to Disregard Jury Findings” and her “Motion for New Trial and/or Motion to Modify, Correct, or Reform Judgment” resulted in a verdict that constitutes a double recovery. 

The Williamses appeal from the trial court’s partial grant of Cunningham’s motion for judgment notwithstanding the verdict.  In their sole cross-issue, they argue that the trial court erred by granting in part Cunningham’s motion for JNOV because legally sufficient evidence exists in the record to support the jury’s finding on the issue of contract damages.  Because we hold that the evidence does not support the jury’s findings, we reverse the portion of the trial court’s judgment awarding damages for breach of contract and fraud and render judgment that R. Kim Williams and Pamela Williams take nothing on their claims of breach of contract and fraud.

I.  Facts
 
and Procedural History

On May 26, 2004, Cunningham contracted with the Williamses to sell them her house.  The Williamses claimed at trial that under an amendment to the contract dated June 15, 2004 (“the addendum”), Cunningham had agreed to be responsible for replacing the roof by July 25, 2004.  The addendum, as drafted by the Williamses, stated:  “Seller agrees to replace the existing roof no later than July 15, 2004 with [a] new roof of equal or better quality.”  The addendum went on to specify the requirements of the new roof and then stated, “Seller agrees to be singularly liable for roof replacement in accordance with the terms above.”  The Williamses signed the addendum, and it was faxed to Cunningham.  Cunningham inserted an asterisk after ”July 15, 2004,” and added the language “subject of [sic] availability of roofing contractor acceptable to Allstate Insurance Company” (the “subject to” language).  Allstate was Cunningham’s insurer for the house.

The parties closed on June 30, 2004.  Cunningham did not deliver immediate possession because her tenant, Michael Brindley, remained on the property for several days after closing.  With her then real estate agent acting as the broker, Cunningham had entered into a lease with Brindley, effective as of October 4, 2003.  Cunningham characterized the lease at trial as a “castle keeper’s agreement”; Brindley lived in the house while the real estate agent attempted to sell it.  The lease gave Cunningham the option to terminate the lease upon thirty days’ notice; Brindley could terminate the lease with sixty days’ notice.  

The Williamses hired a lawyer to assist in gaining possession of the house.  Cunningham paid Brindley $3,000.00 to move out, and the Williamses took possession on July 2, 2004.

After the Williamses moved into the house and unsuccessfully attempted to have Cunningham pay for a roof replacement, the Williamses replaced the roof themselves and brought suit against Cunningham for breach of contract and for fraud.  Both claims were based on Cunningham’s failure to deliver possession of the house at closing and her failure to replace the roof.  At the end of the Williamses’ case in chief, Cunningham moved for a directed verdict, which the trial court denied.  

Because the trial court determined that the addendum was ambiguous, the court submitted to the jury the question of whether Cunningham agreed to replace the roof.  The jury found for the Williamses on their breach of contract and fraud claims, awarding damages of $11,271.44 as the reasonable and necessary costs to replace the roof, $1,040.00 for the costs in obtaining possession of the house, and $10,000.00 on their fraud claim.  Cunningham filed a “Motion for Judgment Notwithstanding the Verdict and/or Motion to Disregard Jury Findings.”  The trial court granted the motion in part, setting aside the jury’s award of $11,271.44 for the roof replacement.  Cunningham then filed a “Motion for New Trial And/or Motion to Modify, Correct, or Reform Judgment” (“motion for new trial”), which the trial court denied.  Both Cunningham and the Williamses appealed.

II. Analysis

A. Motion for Directed Verdict

The arguments under Cunningham’s first two issues relate to the trial court’s denial of her motion for directed verdict.  
If, at the end of the plaintiff’s case, a defendant makes a motion for directed verdict but then proceeds with her case, the motion must be reurged at the close of the defendant’s case to preserve appellate review.
(footnote: 2)  
The record shows that after Cunningham closed her case, she did not reurge her directed verdict motion.  She therefore did not preserve these arguments for appeal.  We overrule her first two issues.
(footnote: 3)
B. Motion for JNOV

Cunningham argues in her third issue that the trial court erred by denying her motion for JNOV.  Cunningham does not include in her brief any arguments in support of this issue.  Because the issue is inadequately briefed, we do not consider it.
(footnote: 4) 
 We overrule Cunningham’s third issue.

C. Motion for New Trial

Cunningham’s fourth issue is a combined no-evidence and insufficient evidence issue.  She argues that the trial court erred by denying her motion for new trial when no evidence or insufficient evidence supports findings of breach of contract and fraud and the jury’s damage awards for those claims.  

Cunningham’s issue statement asks whether the trial court erred by denying her “Motion for New Trial and/or Motion to Modify, Correct or Reform Judgment”; she argues only that the trial court erred by denying her motion for new trial.  Because her motion for new trial was captioned “Motion for New Trial and/or Motion to Modify, Correct or Reform Judgment,” and in light of the phrasing of her issue, we construe this issue to include an assignment of error to the denial of the motion to modify, as well.
(footnote: 5)  

We first determine what remedy Cunningham seeks under this issue.  Her brief does not specify whether she seeks rendition or remand; it merely asks for the trial court’s judgment to be reversed.  If the trial court erred by denying her motion on the no-evidence grounds asserted under the motion to modify, then rendition, rather than remand, is proper.
(footnote: 6)  If the trial court erred by denying her motion on grounds that she asserted only in her motion for new trial on factual insufficiency grounds, then remand is proper.
(footnote: 7)
 Under this issue, Cunningham attacks the jury’s finding that she agreed to replace the roof, its finding that she committed fraud, and its award of damages for breach of contract.  She contends that there is (1) no evidence or insufficient evidence to support the jury’s award for breach for contract damages, (2) insufficient evidence to support the jury’s finding that she agreed to replace the roof, and (3) no evidence or insufficient evidence to support the jury’s finding that she committed fraud.

1.  Standard of Review

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.
(footnote: 8)  
In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
(footnote: 9)
 An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.
(footnote: 10)  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.
(footnote: 11)
2. The Jury’s Award of Breach of Contract Damages

We first consider Cunningham’s argument that there is no evidence to support the jury’s award of damages for breach of contract, specifically, for the Williamses’ obtaining possession of the house.  Cunningham does not argue that attorney’s fees are not recoverable as damages in this case; she argues only that no evidence supports the award.  

The evidence before the jury showed that the Williamses’ attorney’s fees in obtaining possession were $1,040.00.  There was also testimony that the Williamses bought furniture from Brindley–paying“less than” $500.00 for a dinette set and “around” $300.00 for a bedroom set–but no testimony as to whether the Williamses were required to pay Brindley for the furniture to gain possession of the house and no other evidence linking the furniture purchase to their claim that Cunningham breached their contract.  The record contains no other evidence regarding the monetary value of the breach of contract claim.  The jury awarded the Williamses $1,040.00 on this claim.  Accordingly, we can infer that the jury awarded damages for the attorney’s fees claim but did not award damages for the purchased furniture. 

To be recoverable, attorney’s fees must be reasonable.
(footnote: 12)  A factfinder should consider the following factors when determining the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.
(footnote: 13)  

An award of attorney’s fees must be supported by expert testimony.
(footnote: 14)  

Kim Williams testified that he and his wife hired a lawyer to assist in getting possession of the house, that they agreed to pay their attorney’s reasonable and necessary legal fees, and that they were billed $1,040.00 by their attorney.  No one testified as to the 
Arthur Andersen
 factors, and no expert testified that the fees actually incurred were reasonable and necessary.  Thus, we hold that there is no evidence to support the jury’s answer as to damages in obtaining possession, and, accordingly, that the trial court erred by denying Cunningham’s motion to modify the judgment to exclude this award.  We sustain Cunningham’s fourth issue with respect to the jury’s award of damages for the Williamses’ costs in obtaining possession of the house.  We therefore do not reach Cunningham’s argument that there was insufficient evidence to support the jury’s award or her argument that the evidence was insufficient to support the jury’s finding that she agreed to replace the roof.
(footnote: 15)
3.  The Jury’s Finding that Cunningham Committed Fraud

Cunningham next argues that the trial court erred by denying her motion for new trial because all of the requisite elements for fraud were not present.  She makes three separate sub-arguments here.  She contends first that in order to recover for fraud, a plaintiff must show a material misrepresentation by the defendant, which cannot be vague, loose, or indefinite.  Because the trial court found that the addendum was ambiguous, Cunningham argues, she could not have made a material misrepresentation required to establish fraud.  She also maintains that the Williameses failed to prove that she had no intent to provide occupancy by closing.  Finally, she argues that there is no evidence of an injury suffered because of the alleged fraud that is distinct from the Williamses’ breach of contract claims, precluding recovery as a matter of law.  We address her third sub-argument first because it is dispositive.

Actual injury is an element of common law fraud.
(footnote: 16)  
In Texas, the “actual injury” must be an injury distinct from damages arising from a breach of contract:  “If the defendant’s conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff’s claim may also sound in tort,” but “if the defendant’s conduct . . . would give rise to liability only because it breaches the parties’ agreement, the plaintiff’s claim ordinarily sounds only in contract.”
(footnote: 17)  
Furthermore, “[i]n determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss,” and “[w]hen the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.”  Tort damages are not precluded when a breach of contract is involved if the plaintiff shows fraudulent inducement.
(footnote: 18)
 With respect to their claim for fraud based on an agreement to replace the roof, the Williamses did not allege that Cunningham fraudulently induced them to enter into the sales contract.  And indeed they could not successfully make such a claim in any case because the issue of roof replacement did not arise until after the parties had already entered into the sales contract.  Thus, Cunningham could not have made fraudulent misrepresentations about repairing the roof in order to procure the sales contract, and she did not enter into the sales contract, promising to replace the roof, with no intention of performing.
(footnote: 19)  With respect to the addendum, they did not allege and could not allege that she induced them to enter into it.  There was some testimony that Cunningham’s real estate agent suggested amending the contract, but as for the actual addendum, the Williamses themselves drafted the addendum and signed it, and then submitted it to Cunningham.  Thus, they could not have been relying on any misrepresentation she made in the addendum.  Their only claim was that, without the addendum, they would have attempted to terminate the contract.  Such a claim is not a claim that Cunningham fraudulently procured a contract with them.  

Thus, to the extent that their fraud claim was based on the addendum, the Williamses had to show an injury distinct from their claim based on breach of contract.  Cunningham’s failure to replace the roof would not have given rise to liability independent of the addendum.  Her conduct gave rise to liability only because the conduct was in breach of what the jury determined the parties had agreed to.  Because the Williamses did not allege an injury distinct from damages arising from a breach of contract, we hold that to the extent that the Williamses’ fraud claims were based on Cunningham’s failure to replace the roof, there was no evidence to support the damage award and the trial court erred by denying Cunningham’s motion to modify the judgment to exclude it.  We sustain Cunningham’s no evidence issue with respect to the Williamses’ fraud claim regarding Cunningham’s failure to replace the roof.

Similarly, as to the Williamses’ fraud claim based on Cunningham’s failure to deliver possession of the house at closing, such failure would not have given rise to liability independent of the agreement between the parties.  We therefore hold that to the extent that the jury’s fraud finding was based on Cunningham’s failure to deliver possession of the property at closing, the Williamses did not allege an injury distinct from damages arising from a breach of contract. 

Further, to the extent that their claim could be construed as a fraudulent inducement claim, the Williamses presented no evidence of intent not to perform at the time that the contract was entered into.  In their brief, they point to the fact that, less than a week before the parties were scheduled to close, Cunningham’s husband told Brindley that he thought it was unlikely that closing would take place.  The testimony of Cunningham’s husband is evidence that problems developed between the parties after the contract was entered into but is not evidence that, at the time the contract was entered into, Cunningham had no intention of delivering possession of the property at closing.  Accordingly, there was no evidence to support the jury’s finding of fraud to the extent that it was based on Cunningham’s failure to deliver possession of the house at closing.  We sustain Cunningham’s fourth issue as to the fraud claim and do not reach any of her further arguments raised under the issue.
(footnote: 20)
D. Defective Jury Question

In Cunningham’s fifth issue, she argues that the jury question on fraud damages
 was fundamentally defective because it provided no guidance as to the proper legal measure of damages.  The Williamses contend that Cunningham did not properly preserve this objection.  Because we have already sustained Cunningham’s no-evidence issue on the jury's award of damages for its finding of fraud, we do not reach this issue.
(footnote: 21)
E. Double Recovery

In her sixth issue
, Cunningham argues that awarding the Williamses $1,040.00 for breach of contract damages as well as damages for fraud constitutes a double recovery, and thus the trial court erred by denying her motion for JNOV and her motion for new trial.  Because we have already sustained her no-evidence issue on the jury’s award of damages for breach of contract and for its finding of fraud, we do not reach this issue.
(footnote: 22)
IV. Williamses’ Cross-Appeal

We now consider the Williamses’ cross-appeal.  The Williamses bring one issue arguing that the trial court erred by granting in part Cunningham’s motion for JNOV because legally sufficient evidence exists in the record to support the jury’s findings on contract damages.   A trial court may disregard a jury verdict and render judgment notwithstanding the verdict if no evidence supports the jury finding
 on an issue 
 
necessary to liability or if a directed verdict would have been proper.
(footnote: 23)  
A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) when the evidence is insufficient to raise a material fact issue.
(footnote: 24) 
 
To determine whether the trial court erred by rendering a JNOV, we view the evidence in the light most favorable to the verdict under the well-settled standards that govern legal sufficiency review.
(footnote: 25)  
In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, crediting evidence favorable to the jury finding
 if reasonable jurors could and disregarding evidence contrary to the finding
 unless reasonable jurors could not.
(footnote: 26) 

A plaintiff who seeks to recover the cost of repairs must prove the reasonable value of those repairs.
(footnote: 27)  A plaintiff need not use the words “reasonable” and “necessary” to establish the right to recover costs of repairs; “a claimant need only present sufficient evidence to justify a jury’s finding that the costs were reasonable and the repairs necessary.”
(footnote: 28) 
 But “mere proof of amounts charged or paid does not raise an issue of reasonableness and such amounts ordinarily cannot be recovered without evidence showing the charges were reasonable.”
(footnote: 29)  Evidence of an estimate alone is also not proof of reasonableness; “[w]hen the expert who prepared the estimate of repairs does not testify, the jury has no basis on which to evaluate the estimate.”
(footnote: 30)  Testimony that does no more than recite the repair estimate and which “further states nothing with regard to reasonableness and necessity, is no evidence of any damages amount.”
(footnote: 31) 
 

The Williamses contend that the evidence they presented at trial was legally sufficient.  This evidence consisted of estimates from roofing companies for replacing the roof, an invoice showing the cost the Williamses paid to replace the roof, and testimony.  The invoice from Heathco Services Inc. states that the amount of $11,274.44 was paid in full August 14, 2004.  Kim Williams, who acknowledged that he is not a roof expert, testified as to the amount paid to Heathco to replace the roof.  Jackie Cramer, an employee of Cunningham’s real estate agent, testified that she obtained two estimates for replacing the roof.  Those estimates were admitted into evidence as Plaintiff’s Exhibits 11 and 12 for the limited purpose of showing that estimates were obtained.  The trial court expressly did not allow the estimates admitted for the truth of the matter contained in them.  The Williamses’ attorney attempted to elicit testimony from Cramer that the estimates were in line with other estimates in Denton County, but the trial court found that her testimony would be speculative, sustained Cunningham’s objection, and did not allow the testimony.  Pamela Williams testified that the components put on the roof were the same or of similar quality to the components included in the estimates in Exhibits 11 and 12, but then testified that she did not compare the material used by Heathco with the other estimates to make sure that she was getting the same components as used in those estimates.  We agree with 
Cunningham that no evidence exists to substantiate an award for money damages for breach of contract with respect to the roof repairs.  
The Williamses’ testimony at trial was no more than testimony as to the amount paid, which is not evidence of reasonableness.
(footnote: 32)  
Estimates obtained by an employee of Cunningham’s real estate agent were admitted, but only for the evidence that estimates were obtained, and the experts who prepared the estimates did not testify.  Consequently, the jury had no basis on which to evaluate the estimates.
(footnote: 33)  
Thus, the Williamses produced no evidence of the reasonable cost of repairs, and the trial court did not err by granting Cunningham’s motion for JNOV on the breach of contract damages as to the roof repairs.  Accordingly, we overrule the Williamses’ cross-issue.

V. Conclusion

Having sustained Cunningham’s fourth issue and overruled the Williamses’ cross-issue, we reverse
 the portion of the trial court’s judgment awarding damages for breach of contract and fraud and render judgment that R. Kim Williams and Pamela Williams take nothing on their claims of breach of contract and fraud.  We affirm the remainder of the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and MCCOY, JJ.

MCCOY, J. concurs without opinion.

DELIVERED: 
December 20, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Horton v. Horton
, 965 S.W.2d 78, 86 (Tex. App.—Fort Worth 1998, no pet.).

3:
See id.

4:
See 
Tex. R. App. P.
 38.1(h); 
Citizens Nat’l Bank v. Allen Rae Invs., Inc.
, 142 S.W.3d 459, 489-90 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh’g) (“[A]n inadequately briefed issue may be waived on appeal”).

5:
See 
Tex. R. App. P.
 38.9 (“Briefing Rules to Be Construed Liberally”).

6:
See Olin Corp. v. Dyson
, 678 S.W.2d 650, 657-658 (Tex. App.—Houston [14th Dist.] 1984), 
rev’d on other grounds by Dyson v. Olin Corp.
, 692 S.W.2d 456 (Tex. 1985) (holding that there is no legal or practical basis for the proposition that an appellant's failure to request reversal and rendition in his prayer for relief limits the authority of the appellate court to grant rendition on a no-evidence point); 
see also
 
Tex. R. App. P.
 43.3.

7:
See Alm v. Aluminum Co. of Am.
, 717 S.W.2d 588, 594 (Tex. 1986) (“A trial court may not disregard a jury's answer because it is against the great weight and preponderance of the evidence.  In such a situation, the trial court may only grant a new trial.”) (citations omitted).

8:
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
. 

9:
City of Keller v. Wilson
, 
168 S.W.3d 802, 807, 827 (Tex. 2005)
. 

10:
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).

11:
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

12:
Tex. Civ. Prac. & Rem. Code Ann.
 § 38.001 (Vernon 1997); 
Commonwealth Lloyd's Ins. Co. v. Thomas
, 678 S.W.2d 278, 284 (Tex. App.—Fort Worth 1984, writ refused n.r.e.) (“Attorneys' fees, where recoverable by law, must be reasonable under the particular circumstances of the case and must bear some reasonable relationship to the amount in controversy.”).

13:
Tex. Disciplinary R. Prof’l Conduct 
1.04, 
reprinted in 
Tex. 
Gov’t Code Ann
., tit. 2, subtit. G app. A (Vernon Supp. 2007) (
Tex. State Bar R. 
art. X, § 9)); 
see also
 
Arthur Andersen & Co. v. Perry Equip. Corp.
, 945 S.W.2d 812, 818 (Tex. 1997)

14:
Woollett v. Matyastik
, 23 S.W.3d 48, 52 (Tex. App.—Austin 2000, pet. denied). 

15:
See 
Tex. R. App. P.
 47.1.

16:
M.D. Anderson Cancer Ctr. v. Novak
, 52 S.W.3d 704, 707 (Tex. 2001) (recognizing that in Texas common-law fraud requires a showing of actual injury). 

17:
Sw. Bell Tel. Co. v. DeLanney
, 809 S.W.2d 493, 494 (Tex. 1991). 

18:
See Formosa Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc.
, 960 S.W.2d 41, 45-46 (Tex. 1998) (“[I]t is well established that the legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself.”)

19:
See id.

20:
See
 
Tex. R. App. P.
 47.1.

21:
See
 
id
.

22:
See id.

23:
See
 Tex. R. Civ. P. 
301
; Tiller v. McLure
, 121 S.W.3d 709, 713 (Tex. 2003); 
Fort Bend County Drainage Dist. v. Sbrusch,
 818 S.W.2d 392, 394 (Tex. 1991)
.

24:
Prudential Ins. Co. v. Fin. Review Servs., Inc.
, 29 S.W.3d 74, 77 (Tex. 2000); 
Ray v. McFarland,
 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.).

25:
See Wal-Mart Stores, Inc. v. Miller
, 102 S.W.3d 706, 709 (Tex. 2003). 

26:
See City of Keller v. Wilson
, 168 S.W.3d 802, 807, 827 (Tex. 2005).

27:
Fort Worth Hotel Ltd. P’ship v. Enserch Corp.
, 977 S.W.2d 746, 762 (Tex. App.—Fort Worth 1998, no pet.). 

28:
Id.

29:
Id. 
at 762-763; 
see also Mustang Pipeline Co. v. Driver Pipeline Co.
, 134 S.W.3d 195, 200-01 (Tex. 2004);
 GATX Tank Erection Corp. v. Tesoro Petroleum Corp.
, 693 S.W.2d 617, 620 (Tex. App.—San Antonio 1985, writ ref’d n.r.e.). 

30:
Carrow v. Bayliner Marine Corp.
, 781 S.W.2d 691, 694 (Tex. App.—Austin 1989, no writ). 

31:
Jordan Ford, Inc. v. Alsbury
, 625 S.W.2d 1, 3 (Tex. Civ. App.—San Antonio 1981, no writ).

32:
See Fort Worth Hotel Ltd. P’ship.
, 977 S.W.2d at 762.

33:
See Carrow
, 781 S.W.2d at 694.